IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT
OF TENNESSEE, AT NASHVILLE

DR. MIKHAIL ANIKIN, )
 )
    Plaintiff, )
 )
vs. ) CASE NO.:
 ) JURY DEMAND
DANIEL G. BROWN, and RANDOM )
HOUSE, INC., d/b/a/ DOUBLEDAY )
BOOKS AND ANCHOR BOOKS. )
 )
    Defendants. )
 )

## COMPLAINT

Comes the Plaintiff, by and through counsel, and hereby sues the Defendants and, for cause, would state and show as follows:

### I

### THE PARTIES

*1.*     The Plaintiff, Dr. Mikhail Anikin ("Dr. Anikin"), is a citizen and resident of the Russian Federation who resides in St. Petersburg, Russia, and who is the author and creator of the term and unique, original expression the "DA VINCI CODE" and its unique meaning. Dr. Anikin wrote the book entitled "*Leonardo Da Vinci or Theology in Paint*" (Exhibit # 1) which was first published in 2000. It was in his book *Leonardo Da Vinci or Theology in Paint* (hereinafter "*Theology in Paint*") that he first widely published the term "DA VINCI CODE" in Russian and English and revealed his novel theory about Leonardo Da Vinci's famous painting known as the *Mona Lisa*. Dr. Anikin had used the term he created, "DA VINCI CODE", for many years prior to the publication of his book *Leonardo Da Vinci or Theology in Paint*. Dr. Anikin owns the

copyright in the term and expression DA VINCI CODE and he has the exclusive rights which arise therefrom including, but not limited to, the right to reproduce, derive works from, and translate his work. He has these rights as the author pursuant to the laws of the United States found at 17 U.S.C.A. § 501 *et seq.* and the laws of the Russian Federation namely "On Author's Rights And Neighboring Rights, or Закон Российской Федерации от 09.07.93г. No. 5351-1 "Об авторском праве и смежных правах".

2. The Defendant, Daniel G. Brown ("Dan Brown"), is believed to be a citizen and resident of New Hampshire residing at 9 Spruce Drive, Rye Beach, New Hampshire 03871 and he is the author of the best-selling novel titled by the same name coined by Dr. Anikin, THE DA VINCI CODE (Exhibit # 2). Defendant, Brown, has used the term coined by Dr. Anikin to title his book as well as to sell affiliated products under the name THE DA VINCI CODE. He has registered the trademark "DA VINCI CODE" in the United States Patent and Trademark office (USPTO) as if it were his own to register. The Defendant, Brown, has licensed his infringing name and work to third-parties including, but not limited to, Columbia Pictures, Sony Pictures, and others. He has purposely availed himself of the jurisdiction of the State of Tennessee and the Middle District of Tennessee by selling his infringing works on a constant and continuous basis in the Middle District of Tennessee since he published the work in 2003.

3. The Defendant, Random House, Inc., is believed to be a New York corporation doing business in the Middle District of Tennessee who has sold books under the name THE DA VINCI CODE. Random House, Inc. was registered to do business in Tennessee under I.D. # 0040805 until it was administratively dissolved by the Tennessee Secretary of State on 9-20-1991. Random House, Inc. has continuously and purposely

availed itself of the jurisdiction of Tennessee by conducting business here directly as well as through the internet as do its divisions Doubleday Books and Anchor Books.

4. The Defendants, Doubleday Books and Anchor Books, are believed to be divisions of Random House, Inc. with their principal offices in New York, New York and which regularly conduct their business in Nashville and have sold and continue to sell books in this jurisdiction under the name THE DA VINCI CODE.

## II

## VENUE AND JURISDICTION

5. The Plaintiff avers that jurisdiction is proper in this Court pursuant to 15 U.S.C.A. § 1332 and 15 U.S.C.A. § 1121 because this action involves claims for copyright infringement, trademark infringement and dilution, unfair competition, and violations of the Racketeer Influenced and Corrupt Organizations Act, all of which occurred in the Middle District of Tennessee.

## III

## THE FACTS

6. The Plaintiff, Dr. Anikin, avers that he is the lawful original author and creator of the term, concept and expression "THE DA VINCI CODE" and the underlying meaning of the expression "THE DA VINCI CODE" and that his creation was first published by him prior to the publication of the book, THE DA VINCI CODE of Defendant, Dan Brown, and the subsequent use of the trademark by Defendant, Dan Brown, and the other Defendants.

7. Dr. Anikin avers that his term and expression "THE DA VINCI CODE" was given meaning by him through his book and published by him orally and in writing in his

interpretation of the *Mona Lisa* as painted by Leonardo Da Vinci, in his book *Theology in Paint*.

8. The Plaintiff first published and began using this expression in the late 1980's, and did so before the Defendants. The Defendants have copied the Plaintiff's original work directly as well as having derived substantially similar works.

9. The Plaintiff made his expression public and published it in his book entitled *Leonardo Da Vinci or Theology in Paint* in 2000, years before Dan Brown published his novel, THE DA VINCI CODE.

10. The Plaintiff avers that he published and disseminated his work to the international art community as well as the world through his work, and to others who visited St. Petersburg, Russia, and the Hermitage State Museum where he is a curator.

11. The Plaintiff avers that the expression "THE DA VINCI CODE" was created by him as an expression of his interpretation of the masculine and feminine dichotomy of the *Mona Lisa* and that his interpretation of his term and expression "THE DA VINCI CODE" was infringed upon, and continues to be infringed upon, by the Defendant, Dan Brown, who copied his original work as well as derived works from it.

12. The Plaintiff avers that "THE DA VINCI CODE" is an original expression and an original interpretation of Leonardo Da Vinci's *Mona Lisa*, and he is entitled to protection for his work under both the laws of the Russian Federation, the United States, and, therefore, the Berne Convention as well.

13. The Plaintiff avers that he created this original term and expression and his work of interpretation well before Defendant, Dan Brown, and that Defendant, Dan Brown's, unauthorized use of his work violates his rights under both the laws of the

Russian Federation as codified at "On Author's Rights And Neighboring Rights or Закон Российской Федерации от 09.07.93г. No. 5351-1 "Об авторском праве и смежных правах" with respect to copyright, and those of the United States with respect to copyright, trademark, and pursuant to the Racketeer Influenced and Corrupt Practices Act.

14. Dr. Anikin avers that the Defendants have conspired, aided, abetted, and assisted Defendant, Dan Brown, in exploiting his work in violation of his rights under the laws of the Russian Federation and the United States with respect to copyright, trademark, unfair competition, and the RICO act.

## THE DA VINCI CODE AND *LEONARDO DA VINCI ILI BOGOSLOVIYE V KRASKAKH*
## КОД ДА ВИНЧИ И *ЛЕОНАРДО ДА ВИНЧИ ИЛИ БОГОСЛОВИЕ В КРАСКАХ*

15. Dr. Anikin avers that Dan Brown's novel THE DA VINCI CODE is based on the premise that Leonardo Da Vinci was a member and Grand Master of a secret society, known as the Priory of Sion, which was dedicated to protecting evidence of the true nature of the Christian Church from destruction by the modern Church. An essential theme of his novel is the premise that Leonardo Da Vinci was a theologian who encoded his beliefs with respect to the nature and origin of the Christian Church in his paintings; specifically, he created several paintings as allegories of the Christian Church. This premise is derived from the work of Dr. Mikhail Anikin as expressed in his book *Leonardo Da Vinci or Theology in Paint* (Леонардо Да Винчи или Богословие в Красках, *Leonardo Da Vinci ili bogosloviye v kraskhakh*).

16. Dr. Anikin avers that the premise that Leonardo Da Vinci encoded his theology in his paintings is a central theme of Dan Brown's novel THE DA VINCI

CODE which is evident from the title itself. The meaning of the title, that Leonardo Da Vinci encoded his theological beliefs in his paintings, is clear as well. In his novel, Mr. Brown states that Da Vinci's artwork "seemed bursting to tell a secret, and yet whatever it was remained hidden, perhaps beneath a layer of paint, perhaps enciphered in plain view, or perhaps nowhere at all." (THE DA VINCI CODE, pgs. 184-185). He also states that "...Leonardo was one of the keepers of the secret of the Holy Grail. And he hid clues in his art." (THE DA VINCI CODE, p. 249).

17. Dr. Anikin avers that the premise that Leonardo Da Vinci encoded his theological beliefs in his paintings is derived from original theories developed and expressed by Dr. Mikhail Anikin and set forth in his book, <u>Leonardo Da Vinci ili bogosloviye v kraskhakh</u> (Леонардо Да Винчи или Богословие в Красках, <u>Leonardo Da Vinci or Theology in Paint</u>). As evident from the title, the central theme of Dr. Anikin's book is that Leonardo Da Vinci encoded his theological beliefs in his paintings. In this book, the English translation of which will be referred to hereinafter as "*Theology in Paint*", Dr. Anikin argues that the core subject of the works of Leonardo Da Vinci is the Christian Church. (*Theology in Paint*, p. 2). Da Vinci was "a deeply religious person, who interpreted subtly and convincingly the main dogmata of [the] Christian church as a painter"; he was "not so much an artist-stylist as a theologian-artist". (*Theology in Paint*, p. 9). Dr. Anikin argues that the key to understanding Da Vinci's work lies in Da Vinci's most famous painting, known as "Jokonda" or the *Mona Lisa*. This painting "went down in [the] history of art as a portrait of *Mona Lisa*" (*Theology in Paint*, p. 3); yet, Dr. Anikin argues, it was not a portrait at all, but rather an allegory of the Christian Church. (*Theology in Paint*, pgs. 3-4). He argues that several strange aspects of the painting

"together were an unsolvable riddle of the picture", a riddle which, he argues, was nearly solved by caricaturists who portrayed Jokonda as a man. (*Theology in Paint*, p. 4). The Jokonda contains both female and male aspects; in both it and another painting constructed according to the same principle, known as "La Belle Gabrielle, Mona Vanna, [and] Donna Nuda", the picture can be divided into two parts; "in the left (undoubtedly female) part we can see [a] half-figure of Venus, in the right (male) part we can see a cross between Mercury, Jupiter and Apollo". (*Theology in Paint*, pgs. 4-5). Dr. Anikin argues that the male and female dichotomy portrayed by Jokonda relates to divine origin. (*Theology in Paint*, p. 4). He further argues that this painting portrays "a righteous wife (in other words …Christ's Church)"; the Jokonda is thus an allegory of the Christian Church. (*Theology in Paint*, p. 4).

18. Dr. Anikin avers that Mr. Brown's interpretation of the theology encoded in the works of Leonardo Da Vinci is also derived from Dr. Anikin's theories. This is shown in THE DA VINCI CODE by his interpretation of the *Mona Lisa*. Like Dr. Anikin, Mr. Brown argues that Da Vinci's "*Mona Lisa* is neither male nor female. It carries a subtle message of androgyny. It is a fusing of both." (THE DA VINCI CODE, p. 129). Mr. Brown also argued that the two sides of the *Mona Lisa* differ; specifically, "by lowering the countryside on the left, Da Vinci made *Mona Lisa* look much larger from the left side than from the right side" and that "historically, the concepts of male and female have assigned sides – left is female, and right is male." (THE DA VINCI CODE, p. 128). Additionally, the name "Mona Lisa" is an anagram of "Amon L'Isa", or Amon (the Egyptian God of male fertility) and "L'Isa", a name for the pictogram of Isis (the Egyptian Goddess of fertility); thus, the name "is an anagram of the divine union of

male and female". (THE DA VINCI CODE, p. 130). Furthermore, Mr. Brown stated as follows: "Da Vinci was in tune with the *balance* between male and female. He believed that a human soul could not be enlightened unless it had both male and female elements." (THE DA VINCI CODE, p. 129). In short, the male and female elements of the painting relate to a divine origin – as was argued by Dr. Anikin.

19. Dr. Anikin avers that Mr. Brown's interpretation of Da Vinci's paintings as allegories for the Christian Church also derives from Dr. Anikin's work. Dr. Anikin argued that the dichotomy of male and female in Jokonda showed divine origin and, thus, that the Jokonda symbolized the Christian Church (*Theology in Paint*, p. 4); Mr. Brown likewise argued that the male and female elements of the *Mona Lisa* represented the divine union of male and female. THE DA VINCI CODE, pgs. 129-130).

20. Dr. Anikin avers that Mr. Brown went on to argue that the Holy Grail is an allegory of the Christian Church – and that Leonardo Da Vinci, in his painting known as The Lord's Supper, painted the Holy Grail. Mr. Brown stated as follows:

> "according to the Priory of Sion, the Holy Grail is not a cup at all. They claim the Grail legend – that of a *chalice* – is actually an ingeniously conceived allegory. That is, that the Grail story uses the *chalice* as a metaphor for something else, something far more powerful." (THE DA VINCI CODE, p. 176).

> "...the Grail's description as a *chalice* is actually an allegory to protect the true nature of the Holy Grail. That is to say, the legend uses the chalice as a *metaphor* for something far more important." (THE DA VINCI CODE, p. 258).

Furthermore, he stated that the Holy Grail "...is, in fact, a *person*" (THE DA VINCI CODE, p. 256) – and that Leonardo Da Vinci painted her in his fresco, *The Last Supper*.

she to whom Jesus gave instructions as to how to carry on His Church (THE DA VINCI CODE, p. 268), and it was she who was "'the chalice that held the blood of Christ'…the female womb that carried Jesus' royal bloodline". (THE DA VINCI CODE, p. 270).

21.  Dr. Anikin avers that while Mr. Brown's interpretation of Leonardo Da Vinci's paintings differs in some ways from that of Dr. Anikin – specifically, in that his interpretation emphasizes the role and identity of the Holy Grail and its/her incorporation into Da Vinci's paintings - it is clear that his argument, like that of Dr. Anikin, is, in essence, that a woman symbolizes the Christian Church, and that Leonardo Da Vinci encoded this symbol in his paintings.

22.  Dr. Anikin avers that Mr. Brown stated that "the Priory believes that Constantine and his male successors successfully converted the world from matriarchal paganism to patriarchal Christianity by waging a campaign of propaganda that demonized the sacred feminine, obliterating the goddess from modern religion forever." (THE DA VINCI CODE, p. 133). He further stated that the misconception that Mary Magdalene was a prostitute "is the legacy of a smear campaign launched by the early Church." (THE DA VINCI CODE, p. 263-264). The Priory, of which Leonardo Da Vinci was a Grand Master (THE DA VINCI CODE, pgs. 352-353), was dedicated to guarding proof of the true nature of the Holy Grail (THE DA VINCI CODE, p. 174) and continues to "worship Mary Magdalene as the Goddess, the Holy Grail, the Rose, and the Divine Mother" (THE DA VINCI CODE, p. 275); Da Vinci left clues of its true nature in his artwork. (THE DA VINCI CODE, p. 249).

23.  Dr. Anikin avers that while Dr. Anikin did not specifically refer to Mary Magdalene or to the Holy Grail, he did argue that "contrast comparison" was a principle

utilized by Da Vinci in his work. Dr. Anikin argued that the painting known as "Donna Nuda" was constructed according to the same principle as Jokonda (*the Mona Lisa*), but differed so as to show opposition. (*Theology in Paint*, pgs. 4-5). He argued that the Donna Nuda portrays a "female image-allegory" which is opposed to the "righteous wife" and "Christ's Church" portrayed by Jokonda; it portrays "a great fornicatress from Apocalypse". (*Theology in Paint*, p. 4). Thus, he argued that Leonardo Da Vinci used the image of a woman who seemed to be a prostitute to, through comparison to and contrast with the similar image of the Jokonda, clarify that the Jokonda is an allegory of the Christian Church.

24. Dr. Anikin further argued that Leonardo Da Vinci hid from contemporaries and from his own pupils "a true sense (idea content) of his strange works" because the greatness of the mystery would be belittled if it were to become common knowledge. (*Theology in Paint*, p. 8). He argued that "important becomes common as soon as it is a lot of the crowd", whereas a mystery strikes the imagination of the audience. (*Theology in Paint*, p. 8).

25. Dr. Anikin avers that Mr. Brown used essentially the same argument to explain why the Priory had decided to never unveil the Holy Grail: "It is the mystery and wonderment that serve our souls, not the Grail itself. The beauty of the Grail lies in her ethereal nature…For some, the Grail is a chalice that will bring them everlasting life. For others, it is the quest for lost documents and secret history. And for most, I suspect the Holy Grail is simply a grand idea…a glorious unattainable treasure that somehow, even in today's world of chaos, inspires us" (THE DA VINCI CODE, p. 479).

26. Dr. Anikin avers that Dan Brown developed his novel, THE DA VINCI CODE, around the central theme originated, expressed, and developed by him and set forth in his book *Leonardo Da Vinci ili bogosloviye v kraskhakh* (*Леонардо Да Винчи или Богословие в Красках, Leonardo Da Vinci or Theology in Paint*). THE DA VINCI CODE relies upon the premise that Leonardo Da Vinci was a theologian who encoded messages and symbols of and pertaining to the Christian Church and its history into his paintings; its interpretations of Leonardo Da Vinci's paintings, which are essential to its plot, are derivative of Dr. Anikin's interpretations (i.e., that certain of Leonardo Da Vinci's paintings, including the *Mona Lisa*, are allegorical representations of the Christian Church, and that a woman is symbolic of the Church). This premise was an original premise developed by Dr. Anikin and set forth in his book. Although Dan Brown's interpretations of Leonardo Da Vinci's works differ from those of Dr. Mikhail Anikin, especially in his inclusion of references to the Holy Grail therein, it cannot be denied that they rely on the underlying premise of Dr. Anikin's arguments. Mr. Brown's use of Dr. Anikin's original term and premise THE DA VINCI CODE is a direct and obvious infringement on Dr. Anikin's work. Mr. Brown's use of the interpretation of Dr. Anikin's term "THE DA VINCI CODE" is substantially similar to Dr. Anikin's work and, therefore, constitutes an infringement of Dr. Anikin's property rights as protected under both Russian and United States law.

# IV

## FIRST CAUSE OF ACTION:
## COPYRIGHT INFRINGEMENT IN VIOLATION OF 17 U.S.C.A. §§ 501 *et seq.* AND 17 U.S.C.A. § 506 (a)(1)(a)(b) AND (c)

27. The Plaintiff relies upon the factual averments in numbered paragraphs 1-26 in support of the following cause of action.

28. The Plaintiff avers that the Defendants have violated his copyright of his original term and expression "THE DA VINCI CODE", as well as the underlying meaning of "THE DA VINCI CODE" and his interpretation of the *Mona Lisa*, as a central part and figure in Defendant, Dan Brown's, novel by the same name.

29. The Plaintiff avers that this violates the Plaintiff's rights under the laws of the Russian Federation and of the United States found at 17 U.S.C.A. § 504.

30. Dr. Anikin avers that the Defendants have violated his rights through both the laws of the Russian Federation namely Law of the Russian Federation No. 5351-1 of July 9, 1993 On Author's Rights And Neighboring Rights, Закон Российской Федерации от 09.07.93г. No. 5351-1 "Об авторском праве и смежных правах" and of the United States with respect to copyright, and they have done so willfully and knowingly through the publication of numerous books in multiple languages, and other items, including DVDs, a film by the same name, and other products. Dr. Anikin avers that this constitutes both criminal and civil infringement of his copyright.

31. Dr. Anikin avers that the Defendants have willfully infringed upon his copyright for purposes of commercial advantage and private financial gain by the reproduction and distribution of thousands of copies of infringing works with a total retail

32. Dr. Anikin avers that the Defendants, Dan Brown, Random House, Inc. and its division Doubleday Books and Anchor Books, have all participated in the aforepled infringement of Dr. Anikin's copyright in THE DA VINCI CODE for their own private financial gain in publishing, reproducing, and distributing the book THE DA VINCI CODE throughout the United States and other countries of the world. The Defendants' infringing activities have occurred, and continue to occur in the middle district of Tennessee.

33. Dr. Anikin avers that Defendant, Dan Brown, has violated Dr. Anikin's trademark THE DA VINCI CODE by selling books, videos, films, and other products, in the middle district of Tennessee and have purposely availed themselves of the jurisdiction of the Courts in the middle district of Tennessee.

34. Dr. Anikin avers that the Defendants have collectively and in concert violated his rights under the laws of the Russian Federation, Law of the Russian Federation No. 5351-1 of July 9, 1993 On Author's Rights And Neighboring Rights, Закон Российской Федерации от 09.07.93г. No. 5351-1 "Об авторском праве и смежных правах", and the United States, copyright infringement in violation of 17 U.S.C.A. §§ 501 et seq. AND 17 U.S.C.A. § 506 (a)(1)(a)(b) AND (c), by unlawfully copying his work, deriving works from his work, and failing to attribute the work to him.

35. The Plaintiff avers that he is entitled to damages as a direct result of the Defendants' willful infringement of his work and that he is entitled to statutory damages pursuant to the statute as well.

## SECOND CAUSE OF ACTION:
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT IN VIOLATION OF 18 U.S.C. § 1962(c)

36. The Plaintiff re-alleges and restates paragraphs 1-35 in support of the following cause of action.

37. The Plaintiff avers that, at all relevant times, the Defendants constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and § 1962(c) in that they were corporations or other juridical entities.

38. The Plaintiff avers that the Defendant, Dan Brown, is an individual person within the meaning of 18 U.S.C. § 1961(3) and § 1962(c) who associated with and/or participated in the conduct of the enterprise's affairs.

39. The Plaintiff avers that the Defendants, Dan Brown, Random House, Inc., and Doubleday Books and Anchor Books, conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering within the meaning of 18 U.S.C. § 1961(1), § 1961(5), and § 1962(c); the pattern of racketeering activity consists of violations of the United States Copyright Act of 1976 found at 17 U.S.C. § 501 *et seq*. These acts all occurred after the effective date of the RICO Act, and more than two (2) such acts occurred within ten (10) years of one another.

40. The Plaintiff avers that, in the alternative, at all relevant times, some or all of the following constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and § 1962(c) in that they were "a group of individuals associated in fact". Defendants

Brown, Doubleday Books and Anchor Books, and Random House were an enterprise within the meaning of 18 U.S.C. § 1961.

41. The Plaintiff avers that, at all relevant times, the enterprise was engaged in, and its activities affected, interstate commerce.

42. The Plaintiff avers that all of the predicate acts described herein were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c), in that their common purpose was to infringe upon the copyright of the Plaintiff, and their common result was to profit from the infringement, personally or through their agent or agents, directly or indirectly, participate in all of the acts of racketeering, and/or the acts of racketeering were otherwise related by distinguishing characteristics and were not isolated events.

43. The Plaintiff avers that all of the predicate acts described herein were continuous so as to form a pattern of racketeering activity, in that the Defendants engaged in the predicate acts over a substantial period of time or in that such predicate acts had become the Defendants' regular way of conducting business and said business practices have continued to the present.

44. The Plaintiff avers that, as a direct and proximate result of, and by reason of, the activities and conduct of the Defendants in violation of 17 U.S.C.A. § 501 *et seq.*, the Plaintiff has been injured in his business and property, within the meaning of 18 U.S.C. § 1964(c). Among other things, the Plaintiff has suffered damages as a result of the infringement of his copyright and in the meaning of the expression "THE DA VINCI CODE". The Plaintiff is, therefore, entitled to recover, threefold the damages he has

sustained, together with the cost of this lawsuit, including costs, attorney's fees, and reasonable expert fees.

## VI
## THIRD CAUSE OF ACTION
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT – IN VIOLATION OF 18 U.S.C. § 1962(d) – CONSPIRACY

45.     The Plaintiff re-alleges and restates paragraphs 1-44 in support of the following cause of action.

46.     The Plaintiff avers that the Defendants conspired to conduct or participate, directly or indirectly, in the conduct or the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d). In particular, the Defendants intended to further an endeavor which, if completed, and as completed, would satisfy all of the elements of a substantive RICO criminal offense and an adopted goal of furthering or facilitating the criminal behavior.

47.     The Plaintiff avers that he was injured by the Defendants and their overt acts that are acts of racketeering or otherwise unlawful under the RICO statute, which included acts of criminal copyright infringement.

48.     The Plaintiff avers that, as a direct and proximate result of, and by reason of, the activities of the Defendants and their conduct in violation of 18 U.S.C. § 1862(d), the Plaintiff has been injured in his business and property, within the meaning of 18 U.S.C. § 1964(c). Among other things, the Plaintiff has suffered damages by the infringement of his copyright, and the Defendants have profited therefrom.

49. The Plaintiff avers that he is, therefore, entitled to recover, threefold the damages he has sustained, together with the costs of this lawsuit, including costs, reasonable attorney's fees, and reasonable experts' fees.

## VII
## FOURTH CAUSE OF ACTION
## UNFAIR COMPETITION

50. Dr. Anikin relies upon factual averments in numbered paragraphs 1-49 in support of the following cause of action.

51. Dr. Anikin avers that the Defendants have collectively and in concert appropriated his expression "THE DA VINCI CODE" to their own use and benefit and have falsely passed off Defendant, Brown's, book "THE DA VINCI CODE" as the original work of Defendant, Dan Brown, as well as other products such as DVDs, game sets, and other products. Dr. Anikin avers that the Defendants have usurped, traded on, and passed off THE DA VINCI CODE as their own original work and profited therefrom as if it were their original work when, in fact, it was substantially the work of Dr. Anikin.

52. Dr. Anikin avers that he has sustained substantial financial as well as moral damages as a direct and proximate result of the Defendants' commission of the tort of unfair competition.

## VIII

## FIFTH CAUSE OF ACTION
## TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C.A. § 1114

53. Dr. Anikin relies upon the factual averments in numbered paragraphs 1-52 in support of the following cause of action.

54. Dr. Anikin avers that the Defendants have appropriated his term and

products using his term and in violation of his rights. Dr. Anikin avers that Defendant, Brown, has falsely registered the trademark THE DA VINCI CODE in the United States Patent and Trademark office in multiple classifications and licensed the rights to others.

55. Dr. Anikin avers that the Defendants' use of the term infringes upon his rights and the Defendants' registration of the trademark is a false registration.

**WHEREFORE, PREMISES CONSIDERED, THE PLAINTIFFS PRAY AS FOLLOWS:**

1. That the Defendants be served with process and be required to answer within the time allowed by law;

2. That the Plaintiff be awarded a judgment against the Defendants, jointly and severally, for compensatory damages in an amount in excess of twenty million dollars ($ 20,000,000.00);

3. That the Plaintiff be awarded punitive damages against the Defendants, jointly and severally, in an amount to be determined by the Court for their intentional, willful, knowing, and dishonest violations of the law;

4. That a temporary, mandatory, and permanent injunction be entered against the Defendants restraining them from dissipating or wasting any assets obtained by them unlawfully and from further infringement of the Plaintiff's copyrights and trademark;

5. That the Plaintiff be awarded damages against the Defendants in an amount such as the Court shall deem appropriate and treble the amount of said damages pursuant to 18 U.S.C. § 1964(c);

6. That the damages be trebled pursuant to 18 U.S.C. § 1964(c);

7. That the Plaintiff be awarded all costs of litigation incurred, including reasonable attorney's fees, costs, disbursements, and expenses, pursuant to 18 U.S.C. § 1964(c);

8. That this Court attribute the term THE DA VINCI CODE and its meaning as expressed by Dr. Anikin to Dr. Anikin and nullify the copyright and trademark registrations of Defendant, Dan Brown; and

9. That the Plaintiff be awarded such other, further relief to which he may be entitled.

**THIS IS THE FIRST APPLICATION FOR EXTRAORDINARY RELIEF IN THIS MATTER.**

Respectfully submitted,

*[signature]*

**G. KLINE PRESTON, IV #17141**
**KLINE PRESTON LAW GROUP, P.C.**
**4525 HARDING ROAD, SUITE 200**
**NASHVILLE, TN 37205**
**(615) 620-4322**
**ATTORNEY FOR PLAINTIFF**